IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| GWENDOLYN J. BRANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:07-CV-041 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 16] will be denied, and plaintiff's motion for judgment on the pleadings [doc. 14] will be granted to the extent it seeks remand under sentence four of § 405(g).[1]

I.

*Procedural History*

Plaintiff applied for benefits in April 2003, claiming to be disabled by right leg pain which purportedly limits her standing, walking, and lifting. [Tr. 68, 388]. She alleged

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

a disability onset date of May 8, 2002. [Tr. 386]. Her applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in November 2004.

In February 2005, the ALJ issued a decision denying benefits. [Tr. 364-74]. Plaintiff sought review from the Commissioner's Appeals Council. The Appeals Council vacated and remanded for further evaluation of plaintiff's mental status. [Tr. 382-84].

The ALJ conducted a second administrative hearing in December 2005 and subsequently rendered another decision denying benefits. Therein, he found that plaintiff suffers from "obesity, history of bilateral total knee replacements, bursitis in the right hip, carpal tunnel syndrome status post carpal tunnel release on the right, fibromyalgia, rule out pain disorder, mild to moderate depression and anxiety disorder, rule out obstructive sleep apnea, [and] rule out pain disorder," which are "severe" impairments but not equivalent, singularly or in concert, to any impairment listed by the Commissioner. [Tr. 25]. The ALJ concluded that plaintiff's subjective complaints are to some degree overstated, and he also declined to adopt an opinion of plaintiff's treating orthopaedic surgeon. [Tr. 25, 27-28]. The ALJ ultimately concluded, based on vocational expert testimony, that plaintiff retains the residual functional capacity to engage in a significant number of unskilled sedentary jobs existing in the local and national economies. [Tr. 29]. Plaintiff was accordingly deemed ineligible for benefits.

Appeals Council review was denied on December 2, 2006. [Tr. 10]. The ALJ's second ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Plaintiff's Background and Testimony*

Plaintiff was born in 1963 and has a college degree. [Tr. 74, 77]. She has previously worked as a nurse. [Tr. 69].

Plaintiff claims constant, worsening pain in her right leg and hip which she rates an "eleven" on a scale of one to ten. [Tr. 68, 91, 400, 529]. She allegedly can perform virtually no housework and must elevate her legs most of the time due to pain and swelling. [Tr. 49, 92, 401, 460]. Plaintiff is able to drive [Tr. 92, 401, 460] and attend church several times per week. [Tr. 408, 460].

III.

*Relevant Medical Evidence*

Plaintiff is 5'7" tall and weighs up to 283 pounds. [Tr. 67, 516]. Treating physician David Wooten has "emphasize[d] the need . . . to lose weight" [Tr. 139, 145, 157, 450] and has related plaintiff's obesity to her complaints of fatigue and shortness of breath. [Tr. 355]. In January 2004, rheumatologist Martin Gornisiewicz wrote that "[g]eneralized fatigue is the main problem for her." [Tr. 359]. In late 2004, Dr. Wooten wrote, "She needs

to get on a weight loss program. If she wants to feel better, she is going to have to try to lose weight." [Tr. 352].

Orthopaedic surgeon Harold Cates performed a left knee replacement in 1999 and a right knee replacement in 2002. [Tr. 268, 323]. The left knee surgery is noted to have produced "good clinical results and no pain." [Tr. 265].

Since her right knee surgery, however, plaintiff has complained of "unrelenting" pain. [Tr. 249]. Dr. Cates subsequently performed right knee revision surgery in June 2003. [Tr. 253]. He has since noted tenderness, "legitimate pain in the knee and limitation of motion[.]" [Tr. 474].

A 2003 lumbar MRI showed degenerative changes at multiple levels. [Tr. 246, 284]. Plaintiff underwent a successful right carpal tunnel release in 2001. [Tr. 263-64, 338]. Dr. Wooten has noted "a fibromyalgia type of problem of her shoulders and hips" [Tr. 355] but wrote that "it is hard for me to put [fibromyalgia] down as a cause for disability as it is very vague." [Tr. 353]. Dr. Gornisiewicz noted an unspecified number of tender points and "believe[d]" that plaintiff "fits a diagnosis of fibromyalgia." [Tr. 361]. However, he "also discussed the necessity of weight reduction as I believe this is a contributing factor in her underlying osteoarthritis." [Tr. 361].

State agency physicians completed Residual Functional Capacity Assessment forms ("RFCs") in May and August 2003. The conclusions of these reviewing physicians were essentially identical. Each predicted that plaintiff could occasionally lift up to twenty

4

pounds, frequently lift up to ten pounds, sit for six hours per workday, stand/walk for three hours per workday, and push and pull with her legs on only a limited basis. [Tr. 341, 347].

In April 2003, Dr. Cates's assistant wrote that plaintiff could perform "just sit down work only, no excessive walking, no lifting[.]" [Tr. 169]. In May 2003, Dr. Cates wrote that plaintiff "will be allowed sit-down work only." [Tr. 249]. In August 2003, Dr. Cates opined that plaintiff could return to work in one month "at sit down work only . . . no lifting." [Tr. 476]. Dr. Cates subsequently again released plaintiff to return to work "with sit down work only" in September 2003, November 2003, and February 2004. [Tr. 472-74]. In June 2004, he noted "permanent restrictions at work which include[] lifting, carrying, pushing and pulling occasionally up to 10 lb. but mostly sitting and may involve standing or walking for brief periods of time." [Tr. 471]. Plaintiff was noted to need no medication refill that day because she was doing "very well" and her pain was "minimal." [Tr. 471].

Plaintiff's last documented appointment with Dr. Cates was on July 27, 2005. [Tr. 469]. More than five months later, Dr. Cates completed a Medical Opinion Form. In material part, he opined that plaintiff could sit no more than six hours, and stand/walk no more than one hour, in an eight-hour workday. [Tr. 512]. Dr. Cates further opined that plaintiff could not be reasonably expected to complete a traditional forty-hour work week "in view of the degree of pain, fatigue or other limitations he/she experiences[.]" [Tr. 513]. Plaintiff was deemed to have "a reasonable medical need to be absent from a full time work schedule on a chronic basis[.]" [Tr. 514]. Therefore, it was Dr. Cates's opinion that plaintiff

5

could reliably complete neither an eight-hour workday nor a forty-hour workweek.

IV.

*Vocational Expert Testimony*

Vocational expert J.D. Flynn ("VE") testified at the second administrative hearing. The ALJ hypothesized a worker of plaintiff's age, education, work background, size, and surgical history. The hypothetical claimant would be restricted to sedentary work, with limited standing or walking and certain moderate mental impairments. [Tr. 561-62].

The VE testified that the hypothetical claimant would be unable to return to plaintiff's prior nursing work. [Tr. 562]. However, the VE identified sedentary unskilled jobs existing in the local and national economies that the hypothetical claimant could perform. [Tr. 562]. If plaintiff's claimed needs for daytime napping or excessive foot elevation were credited, all employment would be precluded. [Tr. 563].

V.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account

whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[2] Disability is evaluated pursuant to a five-step analysis summarized as follows:

---

[2] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

VI.

*Analysis*

A. Remand

Dr. Cates is plaintiff's treating orthopaedic surgeon. In his Medical Opinion Form, Dr. Cates opined that plaintiff would be expected to have excessive work absences and that she could not sit, stand, and walk for sufficient time to complete a traditional eight-hour workday. Plaintiff argues that the ALJ erred in not fully adopting that assessment.

8

The opinion of a treating physician is entitled to great weight if supported by sufficient clinical findings consistent with the evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). However, the Commissioner may reject the opinion of a treating physician if, in part, a valid basis is articulated for the rejection. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The court concludes that a valid basis was not articulated in this case, and that remand is therefore required.

The ALJ reasoned (and the Commissioner continues to argue on appeal) that Dr. Cates's sit/stand/walk opinion (only seven hours total per workday) "comes very close to the physical demands of sedentary work." [Tr. 27]. While that may be true, the treating physician's Medical Opinion Form nonetheless predicts that plaintiff cannot work an eight-hour day. Close or not, the assessment in fact predicts that plaintiff *cannot* meet the demands of sedentary employment, which must be full-time forty-hour work.[3]

As for the prediction of excessive absences, the ALJ concluded "that Dr. Cates took into account the vague fibromyalgia complaints and the claimant's mental limitations. As discussed above, limitations on the mental demands of work activity have been assessed and these restrictions should reduce stress and would not reasonably be expected to preclude

---

[3] The court recognizes Sixth Circuit authority holding that a claimant "need not be found capable of full-time work to be found capable of working." *See Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995); *But see, e.g., Kelley v. Apfel*, 185 F.3d 1211, 1215 n.4 (11th Cir. 1999) (questioning *Conn*). However, post-*Conn*, the Commissioner has clarified that the ability to perform full-time work is required at step five. *See, e.g.*, SSR 96-8p, 1996 WL 374184 (July 12, 1996).

attendance at work." [Tr. 27]. The court has reviewed the Medical Opinion Form and cannot agree with the ALJ's reasoning. Dr. Cates's answer to the pertinent question in no way indicates upon which conditions his opinion is based.

The court accordingly concludes that the reasons provided by the ALJ are not a valid basis for rejection of the treating surgeon's assessment. The ALJ's rationale does not in this case provide substantial evidence to satisfy the Commissioner's step five burden of proof. This matter will be remanded to the Commissioner for further evaluation of plaintiff's claim.

## B. Reversal

To the extent that plaintiff asks this court to award benefits rather than remanding her case, that request must be denied. A reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*

The present record does not meet the standard set forth in *Faucher*. Despite the aspects of Dr. Cates's Medical Opinion Form discussed above, the basis for that physician's opinion is unclear when his file is read as a whole. In January 2003, during plaintiff's brief return to her nursing job, Dr. Cates wrote, "Her main problem is when she

is on her feet a lot at work[.]" [Tr. 173]. Later that month, he noted that plaintiff was "on 8 hrs day now and has pain by the end of the wk. Mon[day] or Tues[day] is okay but by Thurs[day] or Fri[day] she has marked pain and discomfort." [Tr. 172]. Further, Dr. Cates frequently wrote that plaintiff could do "sit down work," but those statements did not address the issue of an eight-hour workday or forty-hour workweek. Reading Dr. Cates's records as a whole, it is thus unclear to what extent he may have still been considering plaintiff's nursing work when he generated the Medical Opinion Form. Equally unclear is the basis for Dr. Cates's shift from "sit down work" to "seven hours only," particularly since (according to the administrative record) he had not seen plaintiff for more than five months prior to the generation of his Medical Opinion Form.

The court additionally notes, as observed by the ALJ, that plaintiff's subjective complaints appear to be overstated. For example, plaintiff told the Commissioner, "The medication I take for pain control renders me incapable of making coherent decisions which as a nurse are required [and the medication also renders me] unable to drive." [Tr. 46, 112, 400]. However, psychological examiner Pamela Branton predicted that plaintiff could generally function well in making judgments on simple work-related tasks [Tr. 465], and plaintiff and her husband have each elsewhere told the Commissioner that the pain medication causes *no* side effects. [Tr. 91, 93, 96, 529]. Plaintiff continues to drive. Also, in June 2004 Dr. Cates wrote that plaintiff needed no medication refill because her pain was "minimal," although plaintiff has told the Commissioner that her pain is constant and an

"eleven" on a scale of one to ten. Lastly, in his Medical Opinion Form, Dr. Cates did not think that plaintiff's pain or medication would cause lapses in concentration or memory on a regular basis. [Tr. 513]. Cumulatively, these facts call into question the claim that medication renders plaintiff incapable of driving or making coherent decisions.

Plaintiff states that she must generally keep her legs raised for five to six hours per workday [Tr. 49, 554], but admittedly can site to no medical source who has instructed her to do so [Tr. 556], as noted by the ALJ [Tr. 25]. For example, Dr. Cates's assessment gave no response to the questions, "Has the patient been advised to elevate one or both lower extremities for a significant amount of time daily? If so, why, and for how long?" [Tr. 513]. Similarly, plaintiff claims to require daily naps [Tr. 549-50], but Dr. Gornisiewicz instructed her "to avoid daytime naps" in order to get a good night's sleep. [Tr. 361]. Strikingly, plaintiff told Dr. Wooten in 2005 that she "does pretty well except when she does not get a good night's sleep." [Tr. 448].

Further, in December 2002, plaintiff was "doing a lot of walking" in a nativity pageant despite her complaints of pain. [Tr. 174]. In April 2005 she told the Commissioner that she does no shopping [Tr. 407], but the following month her husband told the Commissioner that plaintiff can shop "when necessary." [Tr. 423].

In sum: (1) substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints are not reliable; and (2) the opinions of Dr. Cates are not completely clear. The court is therefore not satisfied that "all essential factual issues have been resolved

[or that] the record adequately establishes [] plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. Benefits will not be awarded by this reviewing court at this time.

## C. Conclusion

This matter will be remanded to the Commissioner for a more careful evaluation of plaintiff's claim in light of the issues raised herein and consistent with *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847 (6th Cir. 1986). The Commissioner's reevaluation should likely include a physical consultative examination. In the alternative, given the amount of time that has passed since plaintiff's initial application, the Commissioner should consider use of medical advisor testimony. The rehearing - and any other future hearing involving this claimant - must take place before a different ALJ.

An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge